IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**WILLIAM SCHAFF**                                                                                                      **PLAINTIFF**

v.                                                                                  CIVIL ACTION NO. __1:23cv346 TBM-RPM__

**CITY OF PICAYUNE, MISSISSIPPI**                                                                             **DEFENDANT**

### COMPLAINT
### JURY TRIAL DEMANDED

**COMES NOW** the Plaintiff, William Schaff, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of his rights pursuant to the Age Discrimination in Employment Act of 1967, as amended (ADEA), for age discrimination against the Defendant, City of Picayune, Mississippi. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### THE PARTIES

1.       Plaintiff, William Schaff, is an adult male who resides in Harrison County, Mississippi.

2.       Defendant, City of Picayune, Mississippi, may be served with process by serving Sid Albritton, City Clerk, 203 Goodyear Boulevard, Picayune, Mississippi 39466.

### JURISDICTION AND VENUE

3.       This Court has federal question and civil rights jurisdiction for a cause of action arising under the Age Discrimination in Employment Act of 1967, as amended (ADEA).

4.       This Court has subject matter and personal jurisdiction over the Defendant and venue is proper in this Court.

5.       Plaintiff timely filed his Charge of Discrimination with the EEOC on

1

November 29, 2022, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on November 15, 2023, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of his Notice of Right to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 59-year-old male resident of Harrison County, Mississippi.

7. Defendant hired Plaintiff on November 9, 1997, as a Fire Fighter at the Fire Department of the City of Picayune.

8. Around 2012, Defendant promoted Plaintiff to the position of Lieutenant.

9. Around 2019-20, Defendant promoted Plaintiff to the position of Captain.

10. Plaintiff has worked for 25 years for the City of Picayune.

11. During that time, he has consistently received very positive job performance reviews.

12. Plaintiff was the oldest employee of the Fire Department of the City of Picayune.

13. During February 2021, Pat Weaver was appointed as the new Chief of the City's Fire Department.

14. Regarding promotions, Mr. Weaver has repeatedly passed over those who were more qualified and given positions to lesser qualified candidates who were Mr. Weaver's friends or family members.

15. During the first few weeks of Mr. Weaver's administration as the new Chief, Plaintiff was passed over for the position of Battalion Chief, and Mr. Weaver gave the position to a significantly younger and less qualified candidate, Ottis Mitchell (49-

year-old).

16.     Around February 2022, Plaintiff was again passed over for the position of Battalion Chief, and Mr. Weaver again gave the position to a significantly younger and less qualified candidate, Jason Hunt (45-year-old).

17.     On September 3, 2022, Mr. Weaver terminated Plaintiff.

18.     At that time, Mr. Weaver alleged that Plaintiff had caused other employees to quit.

19.     Plaintiff contends this allegation is false.

20.     After he was terminated, Plaintiff learned that his position was replaced by James Mitchell (50-years-old).

21.     On November 29, 2022, Plaintiff filed an EEOC Charge of age discrimination against the City of Picayune.

22.     On January 9, 2023, in response to Plaintiff's Charge, the City of Picayune submitted a Position Statement to the EEOC.

23.     The City's Position Statement alleges that Plaintiff was "long seen as a negative influence within the fire department. Chief Weaver and others found [Plaintiff] to be verbally abusive and a problem for department morale.

24.     Plaintiff contends that this characterization of him is false.

25.     Plaintiff was employed as a Fire Fighter for the City for 25 years.

26.     His long tenure and history of strong job performance strongly dispute these vague and unfounded allegations.

27.     The City's Position Statement alleges that by September 2022 the "decision [to terminate Plaintiff] came after being informed that a recent hire, Eddie

Lowery, was considering leaving the department over a run in with Schaff. The incident involved Schaff verbally berating Lowery and making a racist comment directed at Lowery's girlfriend."

28.    Plaintiff contends that this allegation is false.

29.    Plaintiff further contends he has never met Mr. Lowery's girlfriend and has never had a conversation with Mr. Lowery about his girlfriend.

30.    Plaintiff recalls hearing Mr. Lowery express thoughts of quitting due to the conflict he (Mr. Lowery) was having with his training officer, Anthony Lossette.

31.    Plaintiff speculates therefore that perhaps Mr. Lossette made an allegation about Mr. Lowery's girlfriend.

32.    That may or may not be the case but Plaintiff adamantly denies that he ever made any negative comment about Mr. Lowery's girlfriend.

33.    The City's Position Statement admits that on September 6, 2022, three days after Plaintiff had been terminated by Chief Weaver, City Commissioner Fred Macdonald and City Manager Harvey Miller effectively withdrew the termination and placed Plaintiff on administrative leave.

34.    Commissioner Macdonald then allegedly began investigating, "to get all sides of the conflict, including Schaff's position, before making a final decision."

35.    The City's Position Statement alleges that Mr. Macdonald then investigated for the next six weeks.

36.    At the conclusion of this alleged investigation, on October 24, 2022, Mr. Macdonald issued a final report which contained the following allegations regarding Plaintiff:

- \*    Failure to comply with workplace safety guidelines, including one instance in which Schaff parked his fire truck in front of a disabled vehicle on a busy highway during a response to an emergency call, which posed a major safety hazard for both firefighters and nearby civilians;

- \*    Being unnecessarily argumentative and displaying outward insubordination toward his superiors by openly accusing the Fire Chief of nepotism, accusing the Human Resources Department of refusing to update his personnel file, accusing the department of improperly withholding retirement contributions from his paychecks, and talking back;

- \*    Verbally harassing a subordinate firefighter for seeking training from another firefighter on how to check a patient's blood pressure by telling the subordinate to only seek training from Schaff, cursing at him, calling him stupid, and berating him while directing multiple racial slurs at the subordinate's girlfriend;

- \*    Questioning a subordinate firefighter for picking up additional hours, asking, "Why would you help out when the department won't help you?" and further stating, "You really should leave and go to another department where the pay is better and you can actually move up because you won't get anywhere here";

- \*    Referring to the Picayune Fire Department as a "Mickey Mouse Fire Department";

- \*    Complicating scheduling by initially agreeing to a shift change with another employee and then reneging on the agreement; and

5

\*         Threatening to retire from the department after not being promoted.

37. On November 7, 2022, Plaintiff was terminated, for a second time, this time due to the allegations listed above.

38. In response to the allegations listed in Mr. Macdonald's report, Plaintiff Contends that he was employed as a Fire Fighter for the City of Picayune for 25 years.

39. During his long tenure, he had overwhelmingly positive job performance reviews.

40. Plaintiff contends that the working environment of the fire station was often such that coarse language was not unusual.

41. A certain amount of mild profanity or playful teasing was common and unremarkable to those employed there.

42. That said, Plaintiff adamantly denies that he was ever viewed in a unique light as a "negative influence" or known for cursing or negative comments any more than anyone else employed there.

43. Plaintiff denies that he failed to comply with workplace safety guidelines.

44. In the instance referred to above, Plaintiff denies that his actions constituted "a major safety hazard for both firefighters and nearby civilians".

45. Rather, Plaintiff generally did everything possible to be 'by the book' in regard to safety guidelines.

46. Plaintiff denies that he was viewed as particularly argumentative.

47. Moreover, Plaintiff contends he generally got along very well with others prior to the appointment of Mr. Weaver as the Chief.

48. Plaintiff denies verbally harassing a subordinate for seeking training from

6

another firefighter.

49. As a firefighter, Plaintiff contends it is very important for trainees to learn to check blood pressure, but he absolutely sees no reason for a trainee not to seek guidance from more than one trainer.

50. Plaintiff contends that the allegation that he attempted to pressure a trainee not to seek guidance from another trainer is false.

51. While, as noted above, Plaintiff concedes that a certain amount of playful profanity or teasing was commonplace in his work environment, Plaintiff denies ever referring to a subordinate by cursing at him in a slanderous manner or calling him stupid.

52. Moreover, Plaintiff adamantly denies ever directing "multiple racial slurs" at anyone.

53. Plaintiff denies criticizing the City's fire department to subordinates.

54. Plaintiff contends he made some mildly disparaging comments about the City's fire department after he was terminated.

55. This frustration is somewhat understandable since he had been discriminated against due to his age.

56. The reference to a "Mickey Mouse Fire Department" is a good example of the mild disparagement that was made by Plaintiff.

57. Plaintiff contends that after 25 years of faithful service, to put forth this sort of comical statement as a reason for termination is a feeble pretext.

58. Plaintiff contends that in general, the allegations made against him are at worst entirely false, and at best, gross oversimplifications of complex situations.

59. At the end of the day, Plaintiff was passed over for appropriate promotions due to his age and the positions were given to substantially younger and less experienced candidates.

60. Then Plaintiff was terminated and replaced by a younger and less qualified candidate.

## CAUSE OF ACTION

### COUNT I:  VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT – AGE DISCRIMINATION

61. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 60 above as if fully incorporated herein.

62. As described in more detail above, Defendant has discriminated against Plaintiff because of his age which constitutes a violation of the Age Discrimination in Employment Act of 1967, as amended.

63. As a result, Plaintiff has suffered lost wages, benefits and other pecuniary losses.

64. The unlawful actions of Defendant complained of above were willful and taken in reckless disregard of the statutory rights of Plaintiff, thus entitling Plaintiff to liquidated damages pursuant to the ADEA.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages;
2. Reinstatement or future wages in lieu of reinstatement;
3. Liquidated damages;
4. Attorney fees;
5. Lost benefits;
6. Pre-judgment and post-judgment interest;
7. Costs and expenses; and
8. Such further relief as is deemed just and proper.

THIS the 30th day of November 2023.

                Respectfully submitted,

                WILLIAM SCHAFF, Plaintiff

By:   /s/Louis H. Watson, Jr.
       Louis H. Watson, Jr.  (MB# 9053)
       Nick Norris (MB# 101574)
       Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, MS 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
Web:  www.watsonnorris.com

9